IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA MARLENE WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) ) Civil Action No. 19-1641 |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) |
| Defendant. | ) ) |

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Linda Marlene Williams ("Williams") seeks judicial review of the Social Security Administration's denial of her claim for Supplemental Security Income ("SSI"), disability insurance benefits ("DIB") and a period of disability. She alleges a disability onset date of January 2, 2018. (R. 15) . The ALJ denied her claim following a hearing, during which both Williams and a vocational expert ("VE") testified. Williams then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 11 and 13. For the reasons below, the ALJ's decision is affirmed.

### Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is

1

based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial

evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

   II. The ALJ's Decision

As stated above, the ALJ denied Williams's claim for benefits. At step one of the five step analysis, the ALJ found that Williams had not engaged in substantial gainful activity since the alleged onset date. (R. 17) At step two, the ALJ concluded that Williams suffers from the following severe impairments: obesity, diabetes mellitus with hyperglycemia, lumbar degenerative disease with lumbosacral radiculitis, thyroid cancer, status post thyroidectomy, hypothyroidism, osteoarthritis of the knees, and hepatic steatosis. (R. 18) At step three, the ALJ concluded that Williams does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19-20) Between steps three and four, the ALJ found that Williams has the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 20-24) At step four, the ALJ found that Williams is unable to perform any past relevant work. (R. 24) At the fifth step of the analysis, the ALJ concluded that, considering Williams's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 24-25) As such, the ALJ concluded that Williams was not under a disability during the relevant period. (R. 25)

   III. Discussion[1]

---

[1] Williams urges that the ALJ erred in not finding that her urinary incontinence constituted a "severe impairment" at the second step of the analysis and that he failed to accommodate this impairment in formulating the RFC. I disagree. Williams' medical records indicate that, with the exception of one occasion when she had a urinary tract infection, she routinely denied urinary issues. (R. 360, 372, 409, 447, 459, 572, 674, 677, 738, 746, 757 and 907)

(1) Step Three - Listing 1.02

Williams urges that the ALJ erred in not finding in her favor at the third step of the analysis. "[T]he Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so severe that they may be presumed to be disabled." *Harold v. Berryhill*, Civ. No. 18-09-E, 2019 WL 1359244, at * 1 n. 1 (W.D. Pa. March 26, 2019), *citing*, 20 C.F.R. 404.1525(a), 416.925(a). "Because the Listings define impairments that would prevent a claimant from performing any gainful activity – not just substantial gainful activity – the medical criteria contained in the Listings are set at a higher level than the statutory standard for disability." *Harold*, 2019 WL 1359244, at *1 n. 1 (citations omitted). Consequently, to satisfy a listing at step three, a claimant must meet all of the specified medical criteria. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A mere diagnosis is insufficient to satisfy a listing.

Williams contends that she satisfies the requirements of Listing 1.02A.[2] This Listing addresses the major dysfunction of a joint and is:

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically accepted imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in *inability to ambulate effectively, as defined in 1.00B2b*;
>   …

---

Additionally, no medical provider assessed any functional limitations associated with urinary incontinence. Consequently, she has not discharged her burden of demonstrating that her alleged urinary incontinence significantly limited her physical or mental ability to do her basic work activities.

[2] Williams does not argue that she met the requirements of Listing 1.02B – that she had a major dysfunction of a joint characterized by gross anatomical deformity and chronic pain … with involvement of one major peripheral joint in each upper extremity resulting in inability to perform fine and gross movements effectively. *See* ECF Docket No. 12, p. 11-12.

Listing 1.02 (emphasis added). Listing 1.00B2b, in turn, defines an inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities." (emphasis added) Examples of ineffective ambulation under 1.00B2b, include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Listing 1.00B2b also defines the "inability to perform fine and gross movements effectively" as "an extreme loss of function of *both* upper extremities." (emphasis added). Such examples include, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle paper, and the inability to place files in a file cabinet at or above waist height. Listing 1.00B2b.

     Williams has not pointed to any evidence showing that she satisfies these criteria. She bears the burden in this regard. *Sullivan*, 493 U.S. at 531. She recites the language of Listing 1.02 but fails to identify any medical evidence supporting her contention that the major dysfunction of a joint has resulted in an inability to ambulate effectively. Neither has she identified any medical basis for the use of an assistive

device. Williams was unable to identify the name of the doctor who prescribed a walker for her use. (R. 38) In contrast, Dr. Fox, a state agency physician, concluded that Williams did not meet or equal any listings and that she did not require the use of an assistive device. (R. 77) Williams' treatment notes also indicate that she did not use an assistive device and that she was not a fall risk. (R. 22, 77, 81, 90, 94, 669, 811) Further, following the administration of a lumbar epidural spinal injection in August of 2018, Williams presented with a normal gait and normal muscle strength and tone. (R. 739, 747, 997) That the ALJ recognized Williams' testimony that she uses a walker for ambulation outside her home does not amount to a "concession" or "acknowledgment" that such use is medically necessary. Indeed, the ALJ explicitly concluded that Williams' statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence. (R. 21)

Consequently, I find no error or basis for remand regarding the ALJ's findings at step three of the sequential analysis.[3]

(2) Dr. Paul Fox

Williams also contends that the ALJ erred in that he found persuasive Dr. Fox's sedentary work findings yet determined that Williams was capable of light work. (ECF 12, p. 3) Williams' entire argument consists of one sentence, "[o]f note is that the state agency consultant, Dr. Paul Fox. M.D., limited Plaintiff to sedentary work and not light work as found by the ALJ." (ECF 12, p. 19) This is woefully underdeveloped. Further, I disagree with Williams' contentions. Fox opined that Williams could occasionally lift/carry up to 20 pounds, and frequently lift/carry up to 10 pounds. (R. 80) This is

---

[3] Nor am I convinced by Williams' argument that the hypothetical questions were erroneous because they failed to include functional limitations related to the use of a walker.

consistent with the definitions of "light work." See SSR 83-10. He stated that she could stand/walk for up to 4 hours with normal breaks and sit for up to 6 hours at a time with normal breaks. (R. 80) The RFC does not exceed those findings. Indeed, the ALJ more generously limited Williams to sitting for up to 4 hours only. (R. 20) Consequently, I find no basis for remand.

    (3) Residual Functional Capacity

Williams next argues that the ALJ erred in determining her residual functional capacity ("RFC"). "RFC" refers to the most a claimant can still do despite her limitations. 20 C.F.R. 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. *Id.* Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ. *Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Here, the ALJ found that Williams had the RFC to perform light work, except that she can stand / walk 4 hours in an 8-hour day and can sit for the remaining 4 hours. (R. 20) The ALJ also concluded that, while Williams retained the ability to remain on task and at the workstation while sitting, she had certain exertional and environmental limitations. (R. 20)

    After a review of the opinion and record, I find that the ALJ's RFC determination and related findings are supported by substantial evidence. The ALJ acknowledged Williams' complaints, including difficulties caused by the herniated disc in her back, as well as shortness of breath, fatigue, and sluggishness. (R. 20) Although he credited some of her allegations, he cited substantial record evidence supporting his finding that Williams' complaints were not entirely consistent with the record, and that she retained

the RFC outlined above. The evidence the ALJ cited includes MRIs, x-rays, progress notes, treating providers' observations that Williams appeared healthy and in no acute distress, and other medical evidence showing that Williams responded positively to treatments and medications. (R. 21, citing Exs. 12F, 10F, 1F, 2F, 4F, 8F, 9F, 14F, 15F

To the extent that the record contains conflicting medical opinions[4] or other conflicting evidence, the ALJ adequately addressed that evidence and explained his decision to assign it lesser weight. Further, the ALJ did not discount Williams' complaints in their entirety. Rather, he incorporated numerous restrictions into his RFC finding, including reduced standing / walking and sit/stand options. (R. 21)

(4) Back and Knee Pain

Williams also insists that the ALJ applied "too rigorous" a standard when assessing her allegations of back and knee pain. Williams argues that the ALJ included only boilerplate language with respect to assessing her pain. Again, I disagree. In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ will examine the entire case record, including the objective medical evidence;

---

[4] In a section of her brief entitled "Issues," Williams makes generalized assertions regarding the ALJ's error in considering Williams' urinary incontinence. (ECF 12, p. 3). As stated above in footnote 1, this argument is wholly undeveloped with respect to anything related to "severe impairments." The argument is also undeveloped insofar as it relates to an alleged failure to accommodate in an RFC, Williams has not convinced me that the ALJ erred. The medical records indicate that Dr. Paronish's records contain an isolated notation coupled with a suggestion that Williams engage in kegel exercises. (R. 471) This notation does not constitute a "medical opinion" as Williams suggests. (Nor, for that matter, do the "findings" by Dr. Navalgund and Kimberly Jacobs. Notations in medical records do not amount to a medical opinion that a claimant suffers from a particular condition.) Further, this complaint was voiced and noted during a July 2017 appointment. During subsequent visits, Williams denied experiencing any such issues. (R. 360, 372, 409, 572, 907)  Williams again denied incontinence or increased urinary frequency during appointments with Dr. Paronish in 2018 and 2019. (R. 674, 738, 746, 751). As such, the ALJ was not required to include limitations in the RFC related to urinary incontinence. Nor do I find convincing Williams' contentions that the ALJ erred with respect to the assessment of her diabetes. The ALJ provided an in-depth discussion of her diabetes. (R. 18-23) He noted that she was not followed by an endocrinologist; that her diabetes was "well-managed" and "controlled" with medication and that there was no specialized treatment sought. (R. 21-22) Further, though Williams did not offer complaints of symptoms that could be attributed to diabetes the ALJ did account for fatigue in fashioning the RFC. (R. 22)

and individual's statements about the intensity, persistence, and limiting effects of the symptoms, statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. SSR 16-3p. Additionally, the ALJ will also consider daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, and individual receives or has received for relief of pain or other symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. 404.1529(c) and 416.929(c). I must defer to the ALJ's determinations, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied. 420 U.S. 931 (1975).

After careful review, I find that the ALJ applied the appropriate standard and that his assessment is supported by substantial evidence. For example, the ALJ reviewed Williams' allegations regarding back and knee pain in connection with all of the other evidence of record. (R. 20)  As the ALJ observed, Williams "routinely denied numbness, pain, muscle aches, joint stiffness, and weakness to her treatment providers." (R. 22, citing Exs. 1F, 12F, 15, 14F and 15F). Further, as the ALJ also noted, Williams' family practitioner indicated that she was doing well and that her chronic issues were stable. (R. 22, citing Ex. 12F) Additionally, although Williams reported knee pain in April and July 2018, subsequent examinations indicated normal gait and normal lower

9

extremities. (R. 737, 747, 997) The ALJ also noted that Williams' knee and back pain did not require treatment by specialists. (R. 21) "[H]er musculoskeletal symptoms were generally well controlled with over-the-counter medication and muscle relaxants. Furthermore, treatment providers consistently observed that the claimant appeared healthy and in no acute distress." (R. 21, citing, Exs. 1F, 2F, 4F, 8F, 9F, 12F, 14F and 15F).  The ALJ also noted Williams' activities of daily living. In short, the ALJ complied with his duties pursuant to Social Security Ruling ("SSR") 16-3. Consequently, I find no basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA MARLENE WILLIAMS )<br>      Plaintiff,                             )<br>                                              )<br>  -vs-                                      )<br>                                              )<br>ANDREW M. SAUL,                )<br>COMMISSIONER OF SOCIAL )<br>SECURITY,                             )<br>                                              )<br>      Defendant.                       ) | Civil Action No. 19-1641 |

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 6th day of October 2020, it is hereby ORDERED that the Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED and the Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED. This case shall be marked "Closed" forthwith.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
United States Senior District Judge